UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

THE GENERAL STORE, INC.,

               Petitioner,

        v.

RICHARD VAN LOAN,

              Respondent.

No. CV-06-103-FVS

ORDER

**THIS MATTER** comes before the Court based upon the petitioner's request for judicial review of the revocation of its firearms dealer's license.  The petitioner is represented by Mr. Richard E. Gardiner; the respondent by Assistant United States Attorney Rolf H. Tangvald.

    **BACKGROUND**

    The General Store, Inc. ("General Store") is located in Spokane, Washington.  General Store holds a federal firearms dealer's license which is subject to the requirements of the Gun Control Act of 1968, Pub.L. No. 90-618, 82 Stat. 1213 (codified as amended at 18 U.S.C. §§ 921-930).  Among other things, the Gun Control Act requires licensed dealers to "maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe."  18 U.S.C. § 923(g)(1)(A).  One of the regulations promulgated by the Attorney General is 27 C.F.R. §

ORDER - 1

478.125.  Paragraph (e) of § 478.125 provides, in part, that a licensed dealer "shall enter into a record each receipt and disposition of firearms."  The record required by § 478.125(e) must be bound.  *Id.*  The parties refer to the bound record as an Acquisition and Disposition ("A&D") Book.  Section 478.125(e) prescribes both the type of information that a licensed dealer must record in its A&D Book and the format in which the information must be recorded.  *Id.*

General Store has been inspected by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on a number of occasions. During 2000 and 2001, inspectors issued reports alleging multiple violations, including a failure to maintain adequate records concerning the receipt and disposition of firearms.  This led to meetings between representatives of General Store and ATF officials. At these meetings, participants discussed the alleged violations and the steps General Store needed to take in order to fulfill its duties as a licensed dealer.

Another ATF inspection occurred during January of 2003. Inspectors observed practices that allegedly violate 27 C.F.R. § 478.125 and 18 U.S.C. § 922(b)(2).  The latter makes it unlawful for a licensed dealer to sell or deliver:

> any firearm to any person in any State where *the purchase* or possession by such person of such firearm *would be in violation of any State law* or any published ordinance applicable at the place of sale, delivery or other disposition, *unless the licensee knows or has reasonable cause to believe that the purchase* or possession *would not be in violation* of such State law or such published ordinance[.]

(Emphasis added.)  The results of the inspection were communicated to

ORDER - 2

Richard Van Loan, who serves as the Director of Industry Operations for the Seattle Field Division.  On August 6, 2004, he issued a Notice of Revocation.  General Store requested an administrative hearing, which was held on January 25, 2005.  On February 16, 2006, Mr. Van Loan issued both "Findings and Conclusions" and a "Revocation of Firearms License."  Believing he erroneously revoked its firearms dealer's license, General Store filed a timely petition for judicial review.  18 U.S.C. § 923(f)(3).  The matter comes before the Court based upon the parties' cross motions for summary judgment.

**RULE 56**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact may be considered disputed if the evidence is such that the fact-finder could find that the fact either existed or did not exist.  *See id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).  Here, except as indicated below, the facts upon which the Court relies are either undisputed or established by evidence that permits but one conclusion concerning the fact's existence.

**UNDISPUTED FINDINGS OF FACT**

Mr. Van Loan made a number of findings concerning the manner in which General Store recorded the movement of firearms and processed applications for pistols.  General Store acknowledges that it engaged in the following practices prior to the 2003 inspection:

1. Upon shipping firearms to manufacturers and gunsmiths for repairs, General Store failed to record outward-bound firearms as dispositions in its A&D Books.  Upon receiving repaired firearms from manufacturers and gunsmiths, General Store failed to record inward-bound firearms as acquisitions.

2. Upon the receipt of a firearm from a person who *did not* hold a federal firearms license ("FFL"), General Store frequently failed to record the person's address in its A&D Books.  Upon the receipt of a firearm from a person who *did* hold a FFL, General Store frequently failed to record the person's FFL number in its A&D Books.

3. At the time of the 2003 inspection, General Store could not account for 88 firearms that were supposed to be in its inventory. Its A&D Books did not list the missing firearms as dispositions.

4.  General Store recovered some of the firearms that it had reported as stolen.  General Store did not record the recovered firearms as acquisitions in its A&D Books.

5. General Store did not send copies of applications to purchase pistols to the chief of police of the applicant's city of residence (if the applicant resided in a city) or to the county sheriff of the applicant's county of residence (if the applicant did not reside in a city).  Instead, no matter where the applicant resided, General Store

ORDER - 4

sent copies to the Chief of Police of the City of Spokane.

**DISPUTED CONCLUSIONS OF LAW**

Mr. Van Loan concluded that the first four practices constituted willful violations of 27 C.F.R. § 478.125(e).  He concluded that the fifth practice constituted a willful violation of 18 U.S.C. § 922(b)(2).  General Store disagrees with his conclusions.  According to General Store, its former practices either did not violate federal law or, to the extent they did, were not willful violations.

**STANDARD OF REVIEW**

Review is de novo.  18 U.S.C. § 923(f)(3).  A persuasive explanation of the standard is set forth in *Stein's, Inc. v. Blumenthal*, 649 F.2d 463 (7th Cir.1980) ("*Stein's, Inc.*").  In that case, the Seventh Circuit said that a reviewing court "need not accord any particular weight to the [ATF's] findings and decision." *Id*. at 467.  Nevertheless, a reviewing court may "accord them such weight as it believes they deserve." *Id*.  While the Ninth Circuit has not explicitly embraced this part of the Seventh Circuit's opinion, it has cited *Stein's, Inc.* with approval.  *See, e.g., Cucchiara v. Sec'y of the Treasury*, 652 F.2d 28, 30 n.1 (9th Cir.1981); *Perri v. Dep't of the Treasury*, 637 F.2d 1332, 1335 (9th Cir.1981).

**THE MEANING OF THE TERM "WILLFULLY"**

"The Attorney General may, after notice and opportunity for hearing, revoke any license issued under [18 U.S.C. § 923] if the holder of such license has willfully violated [a] provision of [Chapter 44 of Title 18] or [a] rule or regulation prescribed by the Attorney General under [Chapter 44.]"  18 U.S.C. § 923(e) (modified to

ORDER - 5

include the specific section and chapter to which the terms "this section" and "this chapter" refer).  The term "willfully" was added by the Firearms Owners' Protection Act of 1986 ("FOPA"), Pub.L. No. 99-308, 100 Stat. 449.  In his Findings and Conclusions, Mr. Van Loan defined the term in the following manner.  "A firearms licensee's violations are willful," he wrote, "if the licensee knows its legal obligations and purposefully disregards them or is plainly indifferent to the requirements of law."  (Findings and Conclusions, ¶ 36, at p.13.)  According to General Store, this is an erroneous statement. Although General Store concedes that Mr. Van Loan's definition is consistent with cases decided before FOPA, *see, e.g., Perri*, 637 F.2d at 1336, General Store argues that these cases were effectively overruled by FOPA.  *See Bryan v. United States*, 524 U.S. 184, 190, 118 S.Ct. 1939, 1944, 141 L.Ed.2d 197 (1998) (approving a jury instruction which stated, in part, that a "person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law").  Relying upon *Bryan*, General Store argues that ATF may not revoke its federal firearms dealer's license absent "purposeful, intentional conduct."  (Petitioner's Memorandum in Support of Motion for Summary Judgment, at 10.)  However, this argument has been rejected by every circuit to consider it.  *See, e.g., RSM, Inc. v. Herbert*, 466 F.3d 316, 320-22 (4th Cir.2006); *Article II Gun Shop, Inc., v. Gonzales*, 441 F.3d 492, 497-98 (7th Cir.2006).  There is no reason to think the Ninth Circuit will do otherwise.  Thus, the Court is satisfied that *Perri* and *Cucchiara* remain valid and that they

accurately state the law of this circuit.  A licensed dealer acts willfully when he "understands the requirements of the law, but knowingly fails to follow them or [i]s indifferent to them." *Perri*, 637 F.2d at 1336 (citations omitted).

**FIREARMS PRESENTED FOR REPAIR**

Customers took firearms to General Store to have them repaired. On some occasions, General Store performed the repairs.  On other occasions, General Store transferred the firearms to a gunsmith or the company that manufactured the firearms.  General Store acknowledges that this event constituted a disposition within the meaning of 27 C.F.R. § 478.125(e) and that a disposition must "be recorded by the licensed dealer not later than 7 days following the date of such transaction." *Id.*  Upon completion of the repairs, the manufacturer or gunsmith returned the firearms.  General Store acknowledges that this event constituted an acquisition within the meaning of § 478.125(e) and that an acquisition must "be recorded not later than the close of the next business day following the date of such . . . acquisition." *Id.*  Prior to the 2003 inspection, General Store did not record the transfer of firearms to manufacturers and gunsmiths as a disposition in its A&D Book nor did it record the receipt of returning firearms as an acquisition in its A&D Book.  While General Store concedes that its failure to do so violated § 478.125(e), General Store argues that the violation was not willful.  This argument is unpersuasive.

ATF inspected General Store's inventory of firearms and related records during 2000 and 2001.  There is some indication that, during

the 2000 inspection and subsequent warning conference, ATF and General
Store discussed the latter's record-keeping obligations with respect
to firearms that it shipped to third parties for repair.  In any
event, the issue arose again during 2001.  ATF inspectors observed a
firearm "leaning against the store's inventory[.]"  (2001 Report of
Violations, GX-11, at 1.)  According to William Barany, one of General
Store's officers, "It was a customer's gun that just came in for
sights and was 'not part of the store's inventory.'"  *Id.*  The
inspectors were not satisfied with his explanation and cited General
Store for a violation of its record-keeping obligations.  Moreover,
they required the following "Corrective Action":

> Firearms acquired for gunsmithing, repairs, sights, or any
> other reason should be recorded by some one [sic] or in some
> way so that firearms returned or otherwise disposed on a
> different business day can be recorded, as required by the
> Gun Control Act.

(GX-11, at 1.)  After the 2001 inspection, General Store used two
methods to record the movement of firearms that it received for
repairs.  If General Store transferred the firearms to a manufacturer
or gunsmith, General Store recorded the transfer and return on forms
that it kept in its receiving department.  If General Store performed
the repairs, General Store recorded the transaction in a Firearms
Repair Log.  It appears that General Store began using the Log on or
about October 20, 2001.  Near the top of the front page is the
handwritten statement "ANY FIREARM ON PREMIS OVERNITE [sic] MUST BE
ENTERED."  (LX 1A, at 1.)  This statement is followed by the initials
"WB."  *Id.*  In all probability, the initials are those of William
Barany.  Below his initials, near the bottom of the page, the

ORDER - 8

following warning is printed in a box:

> If any firearm logged into this Gunsmith's Firearms Repair
> Log is delivered to <u>anyone other</u> than the person who brought
> it in for repair, an entry MUST be made in your permanent
> Firearms Acquisition and Disposition Book ("Bound Book"),
> and a Form 4473 filled out and filed just as though the gun
> had been sold.

*Id.* (underlining added by unknown person; capitals in original form).
The presence of both underlining and handwritten comments on the front
page of the Log indicates that General Store was aware of the warning
when it began using the Log.   The warning put General Store on notice
of its duty to record firearms being transferred to manufacturers and
gunsmiths as dispositions in its A&D Book.   The warning was reinforced
by the letter that ATF sent to General Store on or about January 25,
2002.  (GX 12, at 1.)   This letter reiterated allegations contained in
the 2001 Report of Violations.

Despite notice, General Store did not comply with § 478.125(e) by
making the required entries in its A&D Book.   Instead, General Store
used claim forms to record the movement of firearms to and from
manufacturers and gunsmiths.   Since General Store was on notice that
this practice did not comply with § 478.125(e), but continued to
engage in the practice anyway, one may infer that General Store's
conduct was willful.  *See Cucchiara*, 652 F.2d at 30.   The fact that,
in General Store's opinion, the claim forms provided an accurate
record does not diminish its culpability.   Licensees are not permitted
to adopt alternative methods of fulfilling the record-keeping
procedures specified by § 478.125(e) unless they first obtain approval
from the Director of Industry Operations.   27 C.F.R. § 478.125(h).

ORDER - 9

1  General Store never sought, much less received, such approval.

2  **FAILURE TO RECORD INFORMATION REGARDING SOURCE OF FIREARM**

3  Upon the receipt of a firearm, General Store was required to
4  record the person's name and address if the person did not hold a
5  federal firearms license or the person's name and FFL number if the
6  person did hold one.  27 C.F.R. § 478.125(e).  General Store did not
7  always fulfill these requirements.  If the person did not hold a FFL,
8  General Store typically recorded the person's name and driver's
9  license, but not his address.  If the person held a FFL, General Store
10  typically recorded the person's name in a log, but not the number of
11  his FFL.  General Store maintained a list of FFL numbers in a separate
12  book, which it kept near its firearms records.

13  The first issue is whether General Store willfully violated §
14  478.125(e) by recording the name and driver's license of a person who
15  did not hold an FFL.  The relevant sentence of § 478.125(e) states,
16  "The record shall show the date of receipt, *the name and address or*
17  *the name and license number of the person from whom received*, the name
18  of the manufacturer and importer (if any), the model, serial number,
19  type, and the caliber or gauge of the firearm."  (Emphasis added.)
20  Section 478.125(e) does not explicitly state that the term "license
21  number" refers to a federal firearms license, although this is clearly
22  implied.  Consequently, General Store reasonably could have believed
23  that its practice of recording the name and driver's license (rather
24  than name and address) satisfied § 478.125(e).  While General Store
25  was mistaken (and its mistake constitutes a violation of the
26  regulation), this particular violation of § 478.125(e) was not

ORDER - 10

willful.

The second issue is whether General Store willfully violated § 478.125(e) by failing to record the number of a federal licensee in its A&D Book.  General Store had engaged in this practice for some time.  However, during the 2000 and 2001 inspections, ATF inspectors did not mention it.  Their failure to do so does not prevent ATF from revoking General Store's federal firearms dealer's license. Nevertheless, the absence of a warning is relevant with respect to the issue of willfulness; especially where, as here, there is no other evidence that General Store was on notice it was violating § 478.125(e) by failing to record both the licensee's name and FFL number in its A&D Book.  Under the circumstances, this particular violation was not willful.

**FAILURE TO NOTIFY CHIEF LAW ENFORCEMENT OFFICER**

In the State of Washington, a person who seeks to purchase a pistol from a dealer must complete a prescribed application in triplicate.  RCW 9.41.090(5).  The dealer must send a copy of the application to the chief of police of the applicant's city of residence (if the applicant resides in a city) or to the county sheriff of the applicant's county of residence (if he does not reside in a city).  *Id.*  This requirement is printed on the prescribed form. (Declaration of Bruce Barany, ¶ 23, pp. 6-7.[1])  Furthermore, during 1998 and 1999, General Store received written notification of this requirement from federal and state authorities.  Nevertheless, General Store did not comply.  Instead of sending a copy of the application to

---

[1]Neither party has submitted a copy of the form.

ORDER - 11

the chief law enforcement officer of the city or county in which the applicant resided, General Store sent the copy to the Chief of Police of the City of Spokane no matter where the applicant resided. The issue is whether this practice violated 18 U.S.C. § 922(b)(2).[2] General Store denies that it violated § 922(b)(2), much less that any violation was willful. For one thing, General Store notes it had been sending copies of the applications to Spokane's Chief of Police for many years. No one ever objected. For another thing, General Store submits that the instructions on the application form prescribed by the State of Washington are ambiguous. Finally, General Store notes that the written warnings issued by federal and state authorities came before the 2000 and 2001 inspections. During neither inspection did ATF mention the violation. General Store's arguments are unpersuasive. As explained above, ATF was under no obligation to issue a warning before revoking General Store's license. Moreover, unlike the matter of General Store's failure to record FFL numbers, General Store was on notice of the requirements imposed by RCW 9.41.090(5). Even if the instructions on the application were confusing (an issue that the Court does not resolve), General Store received letters from federal and state authorities during 1998 and 1999. Read together, the letters and the instructions on the form provided General Store with adequate notice of the identify of the law

---

[2]As will be recalled, this statute provides in part that it is unlawful for a licensed dealer to sell or deliver "any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law[.]"

ORDER - 12

enforcement officer to whom it was to send a copy of each pistol application.  Having received adequate notice, General Store's failure to comply was a willful violation of 18 U.S.C. § 922(b)(2).

**FAILURE TO RECORD MISSING FIREARMS AS "DISPOSITIONS"**

During the 2003 inspection, General Store could not account for 88 firearms that were supposed to be in its inventory.  Its A&D Books did not list the missing firearms as dispositions.  According to General Store, this omission does not violate 27 C.F.R. § 478.125(e) because the missing firearms were stolen or lost and the theft or loss of a firearm is not a disposition within the meaning of § 478.125(e).

The terms "disposition" and "dispose of" appear in various sections of the Gun Control Act.  In *United States v. Jefferson*, 334 F.3d 670, 674 (7th Cir.2003), the Seventh Circuit examined the term "dispose of" as used in 18 U.S.C. § 922(d)(1).[3]  The Seventh Circuit ruled that a disposition of a firearm may be either commercial and permanent (*e.g.*, a sale) or gratuitous and temporary (*e.g.*, a bailment).  334 F.3d at 675.  It seems likely that Congress intended the term "disposition" to have an equally broad meaning in § 923(g)(1)(A).  In view of the breadth of the term, an argument can be made that thefts and losses are dispositions within the meaning of § 923(g)(1)(A).  The Court might be persuaded were it not for the fact that the subject of thefts and losses is addressed specifically by a separate subsection of § 923(g).  Subsection (g)(6) was added by the

---

[3]Section 922(d)(1) states, "It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . has been convicted of [a felony.]"

ORDER – 13

Violent Crime Control Act of 1994, § 110305, Pub.L. No. 103-322, 108 Stat. 1796, 2013. It states, "Each licensee shall report the theft or loss of a firearm from the licensee's inventory or collection, within 48 hours after the theft or loss is discovered, to the Attorney General and to the appropriate local authorities." 18 U.S.C. § 923(g)(6).

The structure that is present in 18 U.S.C. § 923(g) -- one section (§ 923(g)(1)(A)) specifically addressing dispositions; a separate section (§ 923(g)(6)) specifically addressing thefts and losses -- is also present in the regulations promulgated by the Attorney General. Section 478.39a of 27 C.F.R. prescribes a licensee's duties in the event of a theft or loss. Section 478.125(e) prescribes a licensee's duties in the event of a sale or other disposition.

General Store argues that § 478.39a trumps § 478.125(e) because the former sets forth specific procedures for responding to thefts and losses. It is true that, as a general rule, "the specific prevails over the general." *Bonneville Power Admin. v. FERC*, 422 F.3d 908, 916 (9th Cir.2005). Assuming this principle applies when interpreting administrative regulations, it applies only when two regulations conflict with each other. *See Nat'l Cable & Telecomm. Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 335-36, 122 S.Ct. 782, 787, 151 L.Ed.2d 794 (2002). For example, two regulations arguably would conflict if a person could not comply with one of them without violating the other. Here, there is no conflict. It is not unreasonable to expect a licensee to make the calls and prepare the reports that are required

ORDER - 14

by § 478.39a and, at the same time, make the entries in its A&D Book
that are required by § 478.125(e).  And it makes sense, as a matter of
public policy, for a licensee to do both.  Thus, the fact that §
478.39a establishes specific procedures for reporting the theft or
loss of firearms does not excuse a licensee from complying with the
more general procedures that are established by § 478.125(e) if §
478.125(e) also applies.

But the manner in which § 478.125(e) uses the term "disposition"
does not suggest that it includes thefts and losses.  Section
478.125(e) repeatedly refers to a disposition as a "transaction"
(sixth, seventh, and eight sentences of the regulation).  Furthermore,
§ 478.125(e) contemplates that a dealer will make dispositions of
firearms to two classes of transferees:  "nonlicensees" (seventh
sentence) and "licensees" (eighth sentence).  In both cases, §
478.125(e) presumes the dealer knows the name of the transferee and
the date upon which the transfer of firearms occurred (ninth
sentence).  Otherwise, it would be difficult for a dealer to record
the information required by § 478.125(e).  Perhaps, then, it is
unsurprising that § 478.125(e) makes no reference to thefts or losses.
This issue is addressed by § 478.39a.  The latter imposes specific
requirements upon licensees in the case of thefts and losses; but in
doing so, it makes no reference to dispositions.  This is consistent
with the view that a disposition does include a theft or a loss.

In sum, while Mr. Van Loan's interpretation of § 478.125 may
represent sound public policy, it is questionable whether his
interpretation is supported by the text of the regulation.  That is to

ORDER - 15

1  say, it is questionable whether the theft of a firearm from, or the

2  loss by, a federally licensed firearms dealer constitutes a

3  disposition within the meaning of paragraph (e) of § 478.125.

4  However, given the Court's preceding determinations, the Court need

5  not resolve this issue in order to adjudicate the parties' summary

6  judgment motions.  Moreover, the Court is hesitant to do so where, as

7  here, the parties have not discussed whether Mr. Van Loan's

8  interpretation is entitled to deference.  *Cf. United States v.*

9  *Orellana*, 405 F.3d 360, 369 (5th Cir.2005) ("in a recent case, the

10  Government expressed reservations as to whether [27 C.F.R. § 478.11]

11  as a whole is entitled to any level of deference whatsoever").[4]

12  **CONCLUSION**

13  The Attorney General is authorized to revoke the license of a

14  federal firearms dealer based upon a single, willful violation of the

15  Gun Control Act or the regulations promulgated thereto.  *See*

16  *Appalachian Resources. v. McCabe*, 387 F.3d 461, 464 (6th Cir.2004).

17  Here, the record reflects that General Store committed at least two

18  willful violations.  To begin with, General Store willfully violated

19  27 C.F.R. § 478.125(e) by failing to record the transfer of firearms

20  to a manufacturer or a gunsmith as a disposition in its A&D Book and

21  by failing to record the receipt of returning firearms as an

[4]Following the procedure set forth in § 478.39a, General Store reported certain firearms as stolen.  General Store did not record the thefts as dispositions in its A&D Book.  Later, it recovered some of the firearms that it had reported as stolen and sold some of them.  If its interpretation of § 478.125(e) is correct, General Store did not violate that regulation by failing to record the original thefts as dispositions.

ORDER – 16

acquisition in its A&D Book.  In addition, General Store willfully violated 18 U.S.C. § 922(b)(2) by failing to send copies of pistol applications to the chief of police of the applicant's city of residence (if the applicant resided in a city) or to the county sheriff of the applicant's county of residence (if the applicant did not reside in a city).  In view of these willful violations, Mr. Van Loan was authorized to revoke General Store's firearms dealer's license.  18 U.S.C. § 923(f)(3).  See *Perri*, 637 F.2d at 1336-37.  He is entitled to summary judgment.

**IT IS HEREBY ORDERED:**

1. General Store's motion for summary judgment (**Ct. Rec. 30**) is **denied**.

2. Mr. Van Loan's motion for summary judgment (**Ct. Rec. 25**) is **granted in part**.

3. Provision "3" of the Court's order of May 19, 2006, is vacated.

4. General Store's petition for judicial review (**Ct. Rec. 1**) is **denied**.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this   24th   day of January, 2007.

          s/ Fred Van Sickle          
              Fred Van Sickle
         United States District Judge

ORDER - 17